IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ARMANDO MEDINA, FERNANDO ESCOBAR, and CHRISTIAN SALINAS, individually and on behalf of other similarly situated individuals,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 10 C 3148** |
| **HAPPY'S PIZZA FRANCHISE, LLC, HAPPY'S PIZZA CHICAGO #1, INC., HAPPY'S PIZZA CHICAGO #2, INC., and HAPPY ASKER,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Armando Medina, Fernando Escobar, and Christian Salinas, employees of various Happy's Pizza restaurants, have sued Happy's Pizza Franchise, LLC, Happy's Pizza Chicago #1, Inc., Happy's Pizza Chicago #2, Inc., and Happy Asker (collectively Happy's). They assert claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, for failure to pay overtime wages as well as supplemental Illinois law claims. On January 10, 2011, the Court conditionally certified the case as a collective action pursuant to 29 U.S.C. § 216(b) and authorized notice to similarly situated Happy's employees. Plaintiffs move for partial decertification of the opt-in plaintiffs. For the reasons stated below, the Court grants plaintiffs' motion.

## Background

Happy's Pizza is a chain of franchise restaurants that sells pizza, chicken, seafood, and ribs in several states. Happy's Pizza Franchise, LLC, sells the right to operate restaurants and use the Happy's name and recipes to what it contends are independent franchisee corporations. Happy Asker is the sole member of Happy's Pizza Franchise, LLC. Happy's Pizza Chicago #1, Inc. and Happy's Pizza Chicago #2, Inc. are two of the franchisee corporations. They operate restaurants in Chicago.

Plaintiffs filed suit in May 2010, alleging that Happy's regularly directed them to work more than forty hours a week but did not pay them overtime wages in violation of the FLSA. All three plaintiffs alleged that they had worked at the Chicago Happy's restaurants operated by the defendant corporations. Medina and Escobar also alleged that they had worked in Happy's restaurants in Lansing and Ann Arbor, Michigan and that they had been subjected to the same practices there. Plaintiffs sought to include in the case similarly situated Happy's employees who likewise had not been paid appropriate overtime wages.

The Court granted conditional certification and authorized the plaintiffs to send notice to Happy's employees. At least 254 plaintiffs have opted into the lawsuit, although the parties dispute the exact number. Among the opt-in plaintiffs, a majority worked for Happy's restaurants in either the Eastern or Western Districts of Michigan. Approximately fifty plaintiffs worked for Happy's restaurants in Ohio, all in the Northern District of Ohio, and twenty-three of the opt-in plaintiffs worked for Happy's restaurants in Illinois, all in the Northern District of Illinois. Only about twenty of the opt-in plaintiffs

worked for Happy's restaurants that are operated by the two Happy's franchises named as defendants, Happy's Pizza Chicago #1 and Happy's Pizza Chicago #2. The remaining opt-in plaintiffs worked for forty-six other Happy's restaurants. Defendants contend these restaurants are all operated by distinct franchisee corporations that are not defendants in this suit.

On October 21, 2011, defendants moved to dismiss the case under Federal Rule of Civil Procedure 19. They argued that the forty-six franchisees were necessary parties for several reasons, including that the franchisees were the actual employers of the majority of the opt-in plaintiffs and thus would be liable if plaintiffs prevailed on their FLSA claims. Defendants argued that the franchisees had to be joined to protect their interests. Defendants contended, however, that most of the franchisees would not be subject to personal jurisdiction in Illinois because they operated restaurants in Michigan or Ohio and employed residents of those states. Therefore, defendants argued, the franchisee corporations could not be joined in this suit. Defendants contended that the franchisees were indispensable and that the lawsuit must be dismissed without prejudice.

Plaintiffs then moved for what they called partial decertification, asking the Court to transfer all of the opt-in plaintiffs who had not worked for Happy's restaurants in this district to the appropriate districts in Michigan or Ohio.

**Discussion**

The FLSA provides that employers must pay an employee who works more than forty hours in one work week at one and one-half times the employee's regular rate of

pay for the time over forty hours. 29 U.S.C. § 207(a)(1). Pursuant to the FLSA, "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" may sue an employer through a collective action to recover unpaid overtime wages. *Id.* § 216(b). Once an FLSA action is filed, district courts have "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *accord Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010) ("A district court has wide discretion to manage collective actions.").

"Courts commonly apply a two-part test to determine whether an FLSA claim may proceed as a collective action." *Russell v. Ill. Bell. Tel. Co.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010); *see Smallwood v. Ill. Bell. Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010) (noting that Seventh Circuit has not adopted a standard but that a majority of courts use the two-part test). "In the first step, Plaintiffs only need to make a minimal showing that others in the potential class were similarly situated." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (internal quotation marks omitted). After discovery is completed and the opt-in plaintiffs are identified, the more stringent second step occurs. *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010). "The burden is on the plaintiffs to show that they are 'similarly situated,' as required by the statute." *Russell*, 721 F. Supp. 2d at 811. If the plaintiffs are not similarly situated, the action is decertified.

In this case, the Court previously determined that the plaintiffs satisfied the first step and granted conditional certification. Discovery in this case has not been completed—indeed, it is at a relatively early stage—and thus the second step

determination would be premature.

Plaintiffs request that the opt-in plaintiffs be partially decertified, divided into groups, and transferred to the federal districts in which they worked for Happy's. Defendants argue that any decertification would lead to the dismissal of the opt-in plaintiffs; the Court has no authority to transfer any part of the case; the Court must decide their Rule 19 motion before transferring any part of the case; the Court should not allow any tolling of the limitations period on plaintiffs' claims; and a collective action is not an appropriate means of adjudicating the claims in this suit.

**A. Partial decertification**

Happy's argues that the plaintiffs cannot seek partial decertification followed by transfer of the opt-in plaintiffs, because decertification of a collective action results in dismissal of opt-in plaintiffs. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008)*; Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003); *see also Alvarez*, 605 F.3d at 450 (decertified collective action reverts to individual actions for the named plaintiffs). Plaintiffs' arguments make clear, however, that they are not asking the Court to decertify based on a finding that the plaintiffs are not similarly situated. *See Russell*, 721 F. Supp. 2d at 811. Indeed, it is too soon for the Court to determine whether the collective action should be decertified on the ground that the plaintiffs are not similarly situated, because discovery is not complete. *Rottman,* 735 F. Supp. 2d at 990. Instead, plaintiffs effectively ask the Court to divide the opt-in plaintiffs into four subclasses according to the judicial districts in which they worked and then sever and transfer the out-of-district subclasses to the

appropriate districts.

The Seventh Circuit has recognized that a district court can use subclasses in an FLSA collective action. *Alvarez*, 605 F.3d at 448–50. The court noted that division of an FLSA claim into subclasses, though it can be more complicated than a single-class collective action, may be more efficient than the alternative of requiring plaintiffs to bring many individual claims or a variety of smaller collective actions. *Id.* at 450; *see Ruehl v. Viacom, Inc.*, 500 F.3d 375, 379–80 (3d Cir. 2007) (in ADEA collective action, noting that district court created two subclasses for factually distinct claims). Accordingly, district courts have used subclasses to group similarly situated plaintiffs together within collective actions. *See Russell*, 721 F. Supp. 2d at 814 (creating three subclasses for three different types of claims and decertifying unrelated claims); *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 302 (D. Md. 2007) (creating a subclass for each facility where plaintiffs worked because each had unique defenses to plaintiffs' FLSA claims); *see also Baley v. City of Chicago*, No. 09 C 228, 2011 WL 2214673, at *3 (N.D. Ill. June 2, 2011) (identifying use of subclasses as a possible means of handling subclaims in FLSA suit). In *Coan v. Nightingale Home Healthcare, Inc.*, No. 1:05-CV-0101-DFH-TAB, 2006 WL 1994772 (S.D. Ind. July 14, 2006) (Hamilton, J.), the court used four subclasses for different groups of workers, three of which arguably were exempt from the requirements of the FLSA. *Id.* at * 1. The court also ordered separate trials of the claims of each of the four subclasses. *Id.* at *3. It noted that it had discretion to manage collective actions and that the determination of how many trials to conduct was essentially a case management decision, similar to a decision to join or sever trials in any other case. *Id.* at *3–4.

In this case, the use of subclasses, based on the judicial districts in which the plaintiffs worked, will similarly be a more efficient mechanism for adjudicating the plaintiffs' claims. As defendants have argued, the plaintiffs from the different judicial districts worked at different restaurants, which suggests that a significant part of the evidence for each subclass would be distinct. Defendants also note that the Michigan and Ohio plaintiffs cannot bring supplemental claims under Illinois law, as the named plaintiffs have done, and that they may be in a position to assert supplemental state law claims based on Michigan and Ohio law, which the Illinois plaintiffs cannot bring. Dividing the plaintiffs into subclasses will allow those claims to be more effectively handled as well.

After the collective action has been divided into subclasses, the Court can sever the subclasses from one another, creating separate actions. *See* Fed. R. Civ. P. 21; *Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011) ("When a federal civil action is severed . . . the severed claims proceed as if suits had been filed separately."); *see Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010) (court had discretion to sever FLSA claims of 800 plaintiffs who worked at 300 stores). "[A] district court may sever claims under Rule 21, creating two separate proceedings, so long as the two claims are discrete and separate." *Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (internal quotation marks omitted). The claims of the separate subclasses relate to different Happy's restaurants and will be proven, in significant part, with distinct evidence.[1] For this reason, the claims

[1] The Court does not intend by this to suggest there is no common evidence.
(continued...)

appropriately can be severed.

To support their argument that the Court cannot appropriately grant plaintiffs' motion, defendants cite *Parler v. KFC Corp.*, Civil No. 05-2198 (PJS-JJG), 2007 WL 1621464 (D. Minn. Jan. 22, 2007), in which, they contend, a magistrate judge refused to recommend granting a motion to decertify and transfer similar to the one that plaintiffs request here. *Id.* at *3. In *Parler*, however, the plaintiffs conceded that they were not similarly situated because their job duties varied. *Id.* at *1. Accordingly, the magistrate judge concluded that the plaintiffs' collective action had to be decertified and the opt-in plaintiffs dismissed. *Id.* at *2. The *Parler* plaintiffs argued that they would be similarly situated if divided into state-specific collective actions and that each group could be transferred to a district court in the appropriate state. The magistrate judge determined, however, that the plaintiffs had not shown any evidence of state-wide policies. *Id.* Unlike *Parler*, in this case the plaintiffs have not conceded that they are not similarly situated. Rather, they seek to sever and transfer certain of the resulting subgroups for convenience and to solve the joinder problems that defendants argue the current collective action presents.

Because there is no basis to conclude at this point that the plaintiffs are not similarly situated, there is no reason to decertify the collective action and dismiss the opt-in plaintiffs. Instead, the Court divides the opt-in plaintiffs into subclasses and severs from this case the three subclasses containing the Michigan and Ohio opt-in

---

[1](...continued)
Plaintiffs continue to maintain that there were overarching policies and practices that were used at many, and perhaps all, Happy's restaurants.

plaintiffs.

Defendants also argue that none of the three subclasses containing out-of-state plaintiffs would have a named plaintiff. Defendants state that this will be particularly problematic once the subclasses are transferred to district courts in Michigan and Ohio. But beyond a general reference to the FLSA, defendants do not provide any support for the contention that opt-in plaintiffs must have a named plaintiff to "represent" them. Unlike class members in a Rule 23 class action, opt-in plaintiffs in a collective action have affirmatively decided to become plaintiffs and thus are full parties. 29 U.S.C. § 216(b); *Alvarez*, 605 F.3d at 448; *see Oropeza v. AppleIllinois, LLC*, No. 06 C 7097, 2010 WL 3034247, at *4 (N.D. Ill. Aug. 3, 2010) (class action members generally are not subject to individual discovery because they are permitted to remain outside of the litigation; by contrast, opt-in plaintiffs in a collective actions generally are subject to discovery). In *Coan*, the court determined that because opt-in plaintiffs are full parties, a collective action subclass that did not contain any "named" plaintiff could go to trial separately. *Coan*, 2006 WL 1994772, at *2. The court stated that "[t]he original plaintiffs are no longer representing the additional plaintiffs; they are all plaintiffs. As a result, the court may order separate trials without regard to how and when each plaintiff joined in the case." *Id.* The Court agrees with this reasoning. Every opt-in plaintiff is a party to the case. As a result, the subclasses need not have "named" plaintiffs in order to exist as separate actions.

**B. Transfer**

Happy's argues that the Court has no authority to transfer the Ohio and Michigan

plaintiff subclasses to district courts in those states. It notes that plaintiffs initially based their transfer argument on 28 U.S.C. §§ 1406 & 1631, which require that either venue or jurisdiction be improper in this district. In their reply, plaintiffs concede that the most appropriate authority to transfer the subclasses is 28 U.S.C. § 1404(a). That subsection provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* FLSA claims can be transferred under section 1404(a). *See Landis v. Warner Chilcott (US), LLC*, No. 10 C 5283, 2010 WL 5373664, at *1–2 (N.D. Ill. Dec. 15, 2010) (considering whether to transfer an individual FLSA claim); *Lau v. Aldi, Inc.*, No. 8:09CV219, 2010 WL 610355 (D. Neb. Feb. 17, 2010) (recommending that conditionally certified FLSA collective action be transferred).

The defendants do not dispute that the Michigan and Ohio opt-in plaintiffs could have brought their actions in the federal district courts in the appropriate districts in those states. An FLSA collective action may be brought "in any Federal or State court of competent jurisdiction." 29 U.S. § 216(b). Happy's Pizza Franchise, LLC and Happy Asker, the only two current defendants against which the Michigan and Ohio plaintiffs have claims, do not contend that they are not subject to personal jurisdiction in the Michigan and Ohio districts. Similarly, venue is proper in those districts, because the opt-in plaintiffs worked in the districts and were allegedly denied overtime wages there. For this reason, "a substantial part of the events or omissions giving rise to the claim occurred" in those districts. 28 U.S.C. § 1391(b)(2).

Because the suits of the opt-in plaintiffs in the subclasses could have been brought in the Michigan and Ohio districts, the Court must consider whether transfer for

be convenient for the parties and witnesses and in the interest of justice.

> With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. Other related factors include the location of material events and the relative ease of access to sources of proof.
>
> The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy.

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted).

Several factors indicate that transferring the Ohio and Michigan plaintiff subclasses is convenient for the parties and witnesses and serves the interest of justice. The franchisee corporations, as defendant has argued, are potential defendants on the claims of the subclass members, but they may not be subject to personal jurisdiction in Illinois. Plaintiffs contend that if the Michigan and Ohio plaintiffs are transferred, they will be able to name the franchisees as defendants and will be able to obtain jurisdiction over them in the transferee districts. Beyond the question of whether the franchisees are necessary and indispensable parties, if they are added as defendants or are otherwise subject to the jurisdiction of the district court in which the subclass claims are proceeding, discovery of the specific facts involving each Happy's restaurant will be easier to obtain. Further, the burden of discovery and other proceedings in the case will, in general, be diminished because both the plaintiffs and the restaurants in which they worked will be located in the judicial district where the

lawsuit is proceeding. *See Gilbert v. Wells Fargo Bank, N.A.*, No. C 11-2856 CW, 2011 WL 5118531, at *3 (N.D. Cal. Oct. 28, 2011) (transferring FLSA collective action claim to Nevada when plaintiffs worked in Nevada, not California, and witnesses were primarily located in Nevada and Arizona); *Landis*, 2010 WL 5373664, at *3 (considering where events that form the factual basis of suit occurred for the purposes of making transfer decision).

Additionally, as defendants themselves argued in their Rule 19 motion, the opt-in plaintiffs from Ohio and Michigan might wish to bring Ohio and Michigan state law claims supplemental to their FLSA claims. If the out-of-state subclass plaintiffs bring such claims, the federal district courts of those states will be more familiar with the relevant state laws. *See Gilbert*, 2011 WL 5118531, at *3 (existence of Nevada state law claims favored transfer of case to Nevada, because Nevada courts are both more familiar with laws and have more interest in their effective enforcement).

Generally, the plaintiff's choice of forum is respected, and this can be a reason to deny a defendant's motion to transfer a case. *In re National Presto Indus., Inc.*, 347 F.3d 662, 663–64 (7th Cir. 2003); *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1006–07 (N.D. Ill. 2007) (plaintiff's choice of forum, particularly if it is the plaintiff's home forum, is given substantial weight). Here, however, the opt-in plaintiffs are the parties seeking to transfer in view of the changed circumstances since the original filing of the lawsuit. The defendants, via their Rule 19 motion, effectively concede that the district courts of Michigan and Ohio would be better fora for the opt-in plaintiffs from those states, though defendants' preferred course is to dismiss the plaintiffs' claims in this Court, leaving it to them to refile in the other districts.

In short, both sides now prefer that the non-Illinois plaintiffs' claims be litigated in Michigan and Ohio, and the convenience of parties and witnesses and the interest of justice likewise favor transfer. Accordingly, the Court will transfer the subclasses consisting of opt-in plaintiffs who worked for Happy's in the Western District of Michigan, the Eastern District of Michigan, and the Northern District of Ohio to those districts.

**C. Rule 19 motion**

Defendants contend that transferring parts of this case before ruling on their Rule 19 motion will lead to increased work for them and for the courts. They argue that the Court should resolve the Rule 19 motion before dividing the plaintiffs into subclasses and transferring the opt-in plaintiffs who worked in other states. Plaintiffs argue in response that the reason they have asked for their case to be divided and transferred is to enable them to add the franchisee corporations as defendants following transfer. Plaintiffs assert, and defendants do not appear to dispute, that plaintiffs cannot add the forty-seven out-of-state franchisees in this district or before transfer.

In short, plaintiffs contend they intend to do exactly what defendants' Rule 19 motion would require them to do. It is thus unnecessary to rule on defendants' motion at this time. After transfer, if plaintiffs do not add the franchisees as they have promised, defendants will be able to file Rule 19 motions in the transferee districts. Defendants argue that requiring them (potentially) to file three additional motions impairs judicial economy. They suggest that the case should not be transferred until

this Court resolves the Rule 19 issue. But there is nothing efficient in having this Court decide a motion that will become unnecessary if plaintiffs do what they say they will do following transfer.

For the Illinois-based subclass that the Court is not transferring, plaintiffs have stated that they will add the remaining franchisee that operated a restaurant in which some of the Illinois plaintiffs worked. If plaintiffs fails to do so, the Court will take up defendants' Rule 19 motion anew.

**D. Tolling**

Defendants contend that the Court should not toll the limitations period on the plaintiffs' claims. Plaintiffs' claims, however, are being transferred, not dismissed. For this reason, the claims will remain pending, thus obviating the need to consider tolling with regard plaintiffs' claims against the current defendants. *See Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 607–08 (7th Cir. 2003) (transfer of claims under 28 U.S.C. § 1406 avoids difficulty of expired limitations period).

Defendants seem primarily concerned that the limitations period for claims against the franchisees who are not defendants in this suit might somehow be tolled. As plaintiffs acknowledge, however, when the franchisees are added as parties, the courts where the cases are then pending will determine whether the claims against the franchisees relate back to the initial filing of this action. *See* Fed. R. Civ. P. 15(c)(1)(C).

**E. Collective adjudication**

Defendants finally contend that neither one nor four collective actions is an appropriate means of adjudicating this case. They state that each plaintiff had a single

employer, namely, the franchisee corporation that operated the restaurant where that particular plaintiff worked. Defendants argue that adjudicating together claims that arose from different restaurants would not be efficient or appropriate.

Defendants' argument, however, is more appropriately considered at a time when discovery is complete and defendants have the opportunity argue for decertification of the collective action(s). "At step two [of the certification process], the Court must consider: (1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *Jirak*, 566 F. Supp. 2d at 848. It is premature for the Court to decide this now, because discovery is not complete, and thus the Court cannot rule out the possibility that there is sufficient evidence of a common or overarching policy or other factors that would permit adjudication in one case of claims by plaintiffs who worked at different restaurants. After discovery is completed, the courts hearing the collective actions can consider defendants' arguments for decertification, as well as other remedies, such as the creation of additional subclasses. *See Rawls*, 244 F.R.D. at 302; *Baley*, 2011 WL 2214673, at *3.

**F. Logistics**

In order to transfer the subclasses to the other districts, the subclasses must be severed. Plaintiffs are directed to prepare separate amended complaints for each of the subclasses, indicating which opt-in plaintiffs are members of each, and are to submit them under the current case number as proposed amended complaints.

Following review of those separate amended complaints, the Court will direct the Clerk to assign a separate docket number to each of the non-Illinois complaints. Once this is done, the Court will direct the transfer of each non-Illinois case to the appropriate district.

## Conclusion

For the reasons stated above, the Court grants plaintiffs' motion for partial decertification [docket no. 102]. The Court creates four subclasses of opt-in plaintiffs based on the federal judicial district in which they worked, and will, as described in this decision, sever and transfer the relevant subclasses to the Western District of Michigan, the Eastern District of Michigan, and the Northern District of Ohio. Defendants' motion for joinder is terminated without prejudice [docket no. 94]. Proposed amended complaints for each subclass are to be filed by no later than February 24, 2012. The case is set for a status hearing on February 29, 2012 at 9:30 a.m.

s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: February 3, 2012